### In re Application of EDDY.

[Cite as *In re Application of Eddy* (1989), 65 Ohio App.3d 194.]

Court of Appeals of Ohio,
Washington County.

No. 88 CA 17.

Decided Oct. 31, 1989.

*Lambe & Burton* and *William L. Burton,* for appellants.[1]

STEPHENSON, Judge.

This is an appeal from a judgment entered by the Marietta Municipal Court denying the petition of L.D. Eddy et al., applicants below and appellants herein, to have Carl Heinrich appointed special constable pursuant to R.C. 1907.54. The following errors are assigned:

"I. The trial court erred in applying extra statutory standards to make its findings of fact and its decision of law.

1. There was no party at trial opposing the application, thus there is no appellee in the case on appeal.

"A. The trial court erred in applying a standard of whether or not Mr. Heinrich had stopped vandalism in the past.

"B. The trial court erred in applying the standard of whether or not Mr. Heinrich received the Sheriff's endorsement.

"II. The trial court additionally erred in making its conclusions even on extra statutory standards contrary to all of the evidence presented.

"A. The trial court erred in concluding Mr. Heinrich had not stopped vandalism.

"B. The trial court erred in finding that the Sheriff did not endorse Carl Heinrich.

"III. The trial court abused its discretion in acting contrary to the facts and contrary to the law (O.R.C. § 1907.201) in ignoring the greater weight of the evidence in this case."

On October 8, 1987, appellants filed an application in the Marietta Municipal Court seeking to have Carl Heinrich appointed special constable. Each of the applicants was a property owner in Washington County and held interests in oil and gas wells which were the target of theft and vandalism. A hearing was held on November 16, 1987.

At the hearing, several of the appellants testified that Heinrich had been a special constable for three years and during that period the amount of vandalism and theft to their properties had decreased to almost nothing. In particular, Roxie Anne and Eldene Eddy had lost $10,000 worth of property through the years before Henrich was appointed special constable and had no losses during the three years Heinrich was constable. Judith Heinrich, Carl Heinrich's wife, testified that the year before her husband was appointed they suffered $50,000 of loss due to theft and vandalism. The next year they suffered no major losses. All of the appellants believed that Heinrich was responsible for the decrease in losses.

Heinrich testified as to his qualifications. He had extensive police training, was certified by the Police Officer Training Council, and had been a special deputy for the sheriff's department from 1975 to 1980. During the past three years he had patrolled property as a special constable and, since he owns oil and gas wells, he is familiar with the problems which occur.

The court continued the hearing to enable the Washington County Sheriff, Richard D. Ellis, to testify. Ellis testified on December 16, 1987 that he had received no complaints concerning Heinrich during his three years as special constable. Although Ellis was concerned about the statute allowing for special constables because the constable does not report to anyone, he did not object to Heinrich being appointed.

Because Ellis was not familiar with Heinrich's current qualifications, the court again continued the proceedings to allow Ellis to determine whether he believed that Heinrich was qualified. On March 21, 1988, a third hearing was held, at which time a letter written by Ellis concerning Heinrich was presented. Ellis was not certain whether Heinrich's certification was current or whether certification was even necessary, but he believed Heinrich had the knowledge of the law to perform the duties of special constable. Further, before the March 21, 1988 hearing, the court was provided with a copy of Heinrich's current certification as an instructor in the Ohio Peace Officer Basic Training Program.

On March 30, 1988, the court filed an entry denying appellants' application. The court noted that Heinrich had made no arrests in his three years as special constable and that the sheriff would not endorse the application to appoint Heinrich.

In their first assignment of error, appellants assert that the court erred in applying extra-statutory standards—*i.e.*, whether Heinrich had stopped vandalism and theft in the past and whether the sheriff would endorse Heinrich's appointment—in making its findings of fact and decision of law. R.C. 1907.54 controls the appointment of special constables and reads as follows [2]:

"Upon the written application of the Director of Administrative Services or of three freeholders of the county in which a county court judge resides, the judge may appoint one or more electors of the county as special constables. The special constables shall guard and protect the property of this state, or the property of such freeholders and the property of this state under lease to such freeholders, designated in general terms in the application, from all unlawful acts, and, so far as necessary of that purpose, a special constable has the same authority and is subject to the same obligations as other constables."

The only standard set forth in the section is that a written application be filed by the Director of Administrative Services or by three freeholders.[3]

---

**2.** Appellants cite R.C. 1907.201 as the applicable section. However, that section was transferred and re-numbered in Am.Sub.H.B. No. 158 (1986), as R.C. 1907.54, effective March 1, 1987, before appellants filed their application. R.C. 1907.54 is virtually identical to R.C. 1907.201.

**3.** We further note that R.C. Chapter 1907 concerns the jurisdiction of county courts and R.C. 1907.54 refers to the county court, and the application in the case at bar was filed in municipal court. The municipal court did have jurisdiction over the matter herein by virtue of R.C. 1901.14(A), which reads, in part, as follows:

"Municipal judges have the following powers and duties:

Appellants believe that since they filed an application and presented evidence that Heinrich was qualified, the court should have appointed Heinrich special constable without any further requirements. We disagree.

■ Although we have uncovered no cases involving R.C. 1907.54, there have been several Attorney General opinions which discuss R.C. 1907.54. In 1985 Ohio Atty.Gen.Ops. No. 85–060, the Attorney General determined that a court would be exposed to potential liability for the negligent acts of a special constable if the court did not use ordinary care in appointing that special constable. Thus, since the appointing court is subject to potential liability, it is permissible for it to set forth some requirements so long as they are not unreasonable or arbitrary.

■ We will now examine the two requirements in question. First, the court wanted to know whether Heinrich had been effective in the past. Obviously, this inquiry could not be made about someone who had never been a special constable before. However, in a case like the one at bar, where the person nominated has been a special constable, such inquiry is reasonable because if the person had not been effective, by reappointing that person the court could very well be acting without ordinary care.

■ The second inquiry the court made was whether the sheriff would endorse the nominee. The sheriff is the county's chief law enforcement officer. Heinrich would be appointed special constable to perform certain functions otherwise within the jurisdiction of the sheriff and, therefore, a good working relationship between the constable and sheriff is important. Further, the sheriff, as a peace officer, is in a better position than the court to determine whether a person nominated is suited to perform the duties of special constable.

We finally note that while the Attorney General in 1985 Ohio Atty.Gen.Ops. No. 85–060, *supra*, stated that formal policies and procedures for the governance of special constables were not mandatory, he believed that because of the potential liability of the appointing court, some procedures and policies would be beneficial. Because the requirements set forth by the court were reasonable, appellants' first assignment of error is overruled.

■ In appellants' second assignment of error, they assert that even if the extra-statutory standards were proper, the court's conclusions based upon those standards were contrary to the evidence presented. This is essentially a

---

"(1) To perform marriage ceremonies, take acknowledgment of deeds and other instruments, administer oaths, *and perform any other duties which are conferred upon judges of county courts.*" (Emphasis added.)

manifest weight of the evidence argument. If there is some competent, credible evidence to support the judgment of the court, it will not be reversed on appeal. *Seasons Coal Co. v. Cleveland* (1984), 10 Ohio St.3d 77, 10 OBR 408, 461 N.E.2d 1273.

With respect to the first requirement, the court below stated the following:

"The evidence adduced would reveal to the Court that there has been substantial vandalism to oil and gas properties throughout the county. The evidence would be that many of the applicants feel that Sheriff Richard Ellis and his department has been of no help. This was specially testified to by Miss Roxie H. Eddy and Mr. L.D. Eddy. It does appear to this Court that the Defendant, Carl Heinrich, has participated sporadically in attempting to alleviate the vandalism problem. The Court denied the application on behalf of Mr. Heinrich, filed earlier this year, essentially because there was no proof that Mr. Heinrich's efforts had resulted in any arrests, any convictions or any reduction in vandalism to oil and gas properties. After hearing several hours of testimony this court was only presented with one occasion where Mr. Heinrich has helped stop a theft. In that situation Mr. Heinrich gave verbal advice to Mr. Eddy as how to detain a suspect until the Sheriff arrived. Mr. Heinrich's help was not in apprehending the person or in preventing the vandalism, but simply being able to advise Mr. Eddy how to proceed after Mr. Eddy had happened upon a trespasser on oil and gas property. Mr. Heinrich could have given this advise without being a special constable."

The only evidence the court considered involved actual arrests in which Heinrich was involved. There was a great deal of other evidence presented, however, which was very pertinent to the issue of whether Heinrich had been effective in eliminating vandalism and theft.

All but one of the applicants had been applicants when Heinrich was appointed before. Each of these persons testified that while Heinrich was special constable there was almost no vandalism or theft to their properties, but that before Heinrich was appointed, there was considerable theft and vandalism.

Further, Heinrich testified that he had provided the sheriff and State Highway Patrol with information on a number of occasions which he understood resulted in arrests. There was absolutely no evidence contradicting any of this evidence. Thus, the evidence presented did not support the implicit conclusion that Heinrich had not decreased the amount of vandalism and theft while he was special constable. Appellants' second assignment of error with respect to the first conclusion of the court is sustained.

■ The second conclusion of the court which appellants argue was not supported by the evidence concerns the endorsement by the sheriff. The court stated the following with respect to this issue:

"Sheriff Ellis testified at length and submitted a written letter to the Court. Sheriff Ellis has been at best evasive on this issue. Sheriff Ellis has refused to endorse the application to appoint Mr. Heinrich Special Constable."

We again agree with appellants that the court's conclusion was not supported by the evidence presented. While the sheriff did not specifically state, "I endorse the appointment of Carl Heinrich," the following shows that the sheriff did not oppose Heinrich's appointment:

"Q. Let's start with Mr. Heinrich, but we're going to get to both questions. Are you opposed to Carl Heinrich being a special constable, assuming he meets the qualifications as the law *requires?*

"A. No, sir.

" * * * *

"Q. Carl Heinrich has, for the last three years, been employed by people to watch their oil and gas fields. In that capacity under the statute, he's been authorized to carry a weapon and he has been authorized to have arrest powers by the statute, and now I want to talk specifically about Carl Heinrich. Do you find that offensive with this particular person?

"A. No.

" * * * *

"Q. Assuming that he is and assuming that he has met the statutory requirements, do you have any trouble with Carl being, Carl Heinrich being appointed a special constable in Washington County for these people?

"A. No. That's been answered earlier, previous to it. I have no problem. The only thing I stated, Counsellor, was I question the statute. There's things there that I don't understand. I've got no question of Mr. Heinrich.

" * * * *

"BURTON: But under the law as it now stands and knowing Carl Heinrich's background as you do as the Judge has asked you and I have asked you, you don't oppose Carl Heinrich?

"A. Not as an individual, no."

Further, in a letter written to the court, the sheriff stated the following:

"I feel that Carl C. Heinrich would have the knowledge of the law to perform the duties of special constable, section [1907.54]."

The sheriff's only concerns were based upon the statute allowing for special constables, not application of the statute to Heinrich. Hence, the only conclusion that reasonably could be made from the evidence presented was that while the sheriff had reservations about the statute itself, he had no reservations about Heinrich. Accordingly, appellants' second assignment of error is sustained.

In their third assignment of error, appellants assert that the court abused its discretion in acting contrary to the facts and contrary to the law in ignoring the greater weight of the evidence. As already noted in the discussion of appellants' second assignment of error, the court's factual conclusions were against the weight of the evidence; thus, our analysis of whether the court abused its discretion in acting contrary to law.

■ R.C. 1907.54 states, in part, that "the judge may appoint one or more electors as special constables." "The statutory use of the word 'may' is generally construed to make the provision in which it is contained optional, permissive, or discretionary, at least where there is nothing in the language or in the sense or policy of the provision to require an unusual interpretation." *Dorrian v. Scioto Conserv. Dist.* (1971), 27 Ohio St.2d 102, 56 O.O.2d 58, 271 N.E.2d 834. There is nothing in R.C. 1907.54 which would require an unusual interpretation. Thus, whether or not to appoint a special constable was within the court's discretion. To determine that the court abused its discretion there must have been more than an error of law or judgment, it requires a finding that the court's judgment was "unreasonable, arbitrary, or unconscionable." *State v. Apanovitch* (1987), 33 Ohio St.3d 19, 514 N.E.2d 394.

■ As stated, *supra*, the extra-statutory requirements were reasonable and, therefore, the use of them was not an abuse of discretion. However, there was nothing in the record to support the court's conclusions and, thus, the court's refusal to appoint Heinrich special constable was arbitrary and constituted an abuse of discretion. Appellants' third assignment of error is sustained.

The cause is reversed and remanded and the court below is ordered to file an entry appointing Carl Heinrich special constable.

*Judgment reversed*
*and cause remanded.*

Homer E. Abele, P.J., concurs.

Grey, J., concurs in judgment only.